**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DANIEL R. LEACH, ) | |
| ) | CASE NO. 3:13-cv-02037 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE JEFFREY J. HELMICK |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Daniel R. Leach ("Leach") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for Supplemental Security Income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On November 18, 2009, Leach filed an application for SSI alleging a disability onset date of October 1, 1998. (Tr. 22.) His application was denied both initially and upon reconsideration. *Id*. On December 13, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Leach, represented by counsel, and an impartial vocational expert ("VE") testified. *Id*. On March 9, 2012, the ALJ found Leach was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 31-33.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age forty-eight (48) at the time he filed his application, Leach was a "younger" person under social security regulations. *See* 20 C.F.R. § 416.963(c). By the date of his hearing, Leach had attained fifty (50) years of age and was a "person closely approaching advanced age" under the regulations. *See* 20 C.F.R. § 416.963(d). (Tr. 31.) Leach has a high school (GED) education and past relevant work as a short order cook, a construction worker, and sales attendant. (Tr. 31.)

## III. Standard for Disability

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201. The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV. Summary of Commissioner's Decision

The ALJ found Leach established medically determinable, severe impairments, due to organic mental disorder, bipolar disorder, personality disorder, and polysubstance abuse in reported remission; however, his impairments, either singularly or in combination, did not meet

2

or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 24.) Leach was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for the full range of work at all exertional levels with a number of non-exertional limitations. (Tr. 26, 31.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Leach was not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the

regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### *Severe Impairments*

Leach argues that the ALJ erred by failing to designate any respiratory impairment as "severe." (ECF No. 22 at 17-19.) Leach suggests this was error because he suffered stage II lung cancer resulting in a right lower lobectomy and pulmonary function studies revealed reduced capacity. *Id*.

At Step Two of the sequential evaluation, an ALJ must determine whether a claimant has a "severe" impairment. *See* 20 C.F.R. §§ 404.1520(a)(40(ii) & 416.920(a)(4)(ii). To determine if a claimant has a severe impairment, the ALJ must find that an impairment, or combination of impairments, significantly limits the claimant's physical or mental ability to do "basic work activities." *See* 20 C.F.R. § 416.920(c). "An impairment ... is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," and include: (1) physical functions such as standing, sitting, lifting,

4

handling, etc.; (2) the ability to see, hear and speak; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and, (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Sixth Circuit construes the Step Two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). *See also Anthony v. Astrue*, 2008 WL 508008 at * 5 (6th Cir. Feb. 22, 2008). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." SSR 96–3p, 1996 WL 374181 at *1. However, if an ALJ makes a finding of severity as to just one impairment, the ALJ then "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96–8p, 1996 WL 374184, at *5. When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Nejat v. Comm'r of Soc. Sec.*, 2009 WL 4981686 at * 2 (6th Cir. 2009). The Sixth Circuit has observed that where a claimant clears the hurdle at Step Two (*i.e.* an ALJ finds that a claimant has established at least one severe impairment) and claimant's severe and non-severe impairments are considered at the remaining steps of the sequential analysis, "[t]he fact that some of [claimant's] impairments were not deemed to be severe at step two is ... legally irrelevant." *Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008).

Here, at Step Two, the ALJ considered Leach's lung cancer and found that impairment to be non-severe under the regulations. (Tr. 30.) Specifically, the ALJ stated as follows:

> Similarly, the undersigned also does not find DVT and lung cancer are severe impairments at this time.... As for the recent discovery of lung cancer, which was a stage II adenocarcinoma of the lung (Ex. 29F at 2), the January 2012 records from the Flower Hospital show that the claimant did not have significant chest pain, hemoptysis (spitting of blood), weight loss or new areas of pain. Review of systems was otherwise negative (Ex. 29F at 1). Needle biopsy and workup demonstrated that he had a non-small cell carcinoma of the lung without any

> radiographic evidence of metastatic disease (Ex. 30F at 10).  On January 31, 2012, he underwent right lower lobectomy (an excision surgery performed in early stage non-small cell lung cancer) (Ex. 30F at 10).  There is no indication that that [sic] the surgery was not successful at this time.  There is insufficient evidence indicating that his lung cancer will result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months at this time.  For these reasons, the undersigned finds that DVT and lung cancer status post lobectomy are nonsevere impairments.

(Tr. 30.)

Clearly, the ALJ did consider potential impairments due to lung cancer, but found evidence of severity lacking.  When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the omission of some impairments at Step Two is harmless.  As this Court understands Leach's argument, he believes the ALJ's failure to designate his respiratory problems as severe was not harmless, because the ALJ did not consider them at later steps as evidenced by her failure to incorporate any environmental restrictions into the RFC.  (ECF No. 22 at 17-19.)  The RFC determination sets out an individual's work-related abilities despite their limitations.  *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R.§ 416.927(d)(2).  An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R.§ 416.927(d)(3).  As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence.  *See* 20 C.F.R. § 416.946(c). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence."  *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at **21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)).  Moreover, a plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the RFC determination.  *Carter*, 2012 U.S. Dist. LEXIS 40828 at **21-22.

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant.  *See Varley v. Sec'y of Health &*

*Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). In fashioning a hypothetical question to be posed to a VE, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994). Therefore, it is Leach's position that the VE's testimony did not constitute substantial evidence because it was given in response to an inaccurate hypothetical, which omitted any restrictions that would reasonably accommodate his breathing problems.

It is true that the RFC does not contain any restrictions that appear to accommodate Leach's alleged breathing problems, as there are no restrictions against exposure to fumes, gases, dust, extreme heat or cold, or poorly ventilated areas. Leach's argument, however, is without merit. In his brief, he draws this Court's attention to a Pulmonary Function Study ("PFS") performed in January of 2012 *prior* to his partial right lower lobectomy. (ECF No. 22 at 18, citing Tr. 1892.) He notes that his Forced Expiratory Volume ("FEV 1") was 2.74 (71% of predicted) and diffusing capacity of the lung for carbon monoxide ("DLCO") was 22.24 (70% of predicted). *Id*. Leach omits a Pulmonary Function Report done by Ronald J. Wainz, M.D., indicating that Leach's "flows and volumes suggest a mild likely obstructive ventilatory defect," and also noting that Leach's "[t]otal lung capacity, residual volume are at the lower limits of normal. Thoracic gas volume is normal. Slow vital capacity is reduced. Diffusing capacity is at the lower limits of normal and may suggest early emphysema." (Tr. 1895.) As such, Dr. Wainz opined that Leach was an adequate candidate for a lobectomy. *Id*. He further indicated Leach had "[n]ormal oxygenation on room air." *Id*.

While he would like the Court to find that the ALJ should have imposed environmental restrictions based solely on the PFS results, Leach does not point to the opinion of a single

7

medical source suggesting that some sort of environmental restrictions were necessary. Absent such evidence, this Court cannot find that the RFC or the VE's testimony were unsupported.

The ALJ, therefore, did not commit reversible error by finding that Leach's respiratory problems were non-severe.

### *Nurse Practitioner and GAF Scores*

Leach also argues that the ALJ failed to accord proper weight to the opinion of David Bingham, a psychiatric mental health clinical nurse specialist. (ECF No. 22 at 20-23.)

First, it bears noting that the controlling weight provision of the regulations applies only to "medical opinions," and the opinions of nurse practitioners or nurse specialists are not listed as one of the five types of "acceptable medical sources" but rather are designated as "other sources." *Compare* 20 C.F.R. § 404.1513(a) with 20 C.F.R. § 404.1513(d); *see also Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (finding the ALJ has the discretion to determine the appropriate weight to accord the opinion a non-medical "other source"). Nevertheless, while nurses are not "acceptable medical sources" under the regulations (and ALJs are therefore not required to give 'good reasons' for rejecting their opinions under the treating physician rule), Social Security Ruling 06-03P, 2006 SSR LEXIS 5 notes that information from "other sources" such as nurse practitioners "are important" and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03P, 2006 SSR LEXIS 5 at *5, 2006 WL 2329939 at * 2-3 (Aug. 9, 2006). Interpreting this SSR, the Sixth Circuit has found that opinions from "other sources" who have seen the claimant in their professional capacity "should be evaluated using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) ("Following SSR 06-03P, 2006 SSR LEXIS 5, the ALJ should have discussed the factors relating to his treatment of [nurse practitioner] Hasselle's assessment, so as to have provided some basis for why he was rejecting the opinion"); *see also McKitrick v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 150022, 2011 WL 6939330 at * 12-13 (N.D. Ohio Dec. 30, 2011); *Kerlin v. Astrue*, 2010 U.S. Dist. LEXIS 103014, 2010 WL 3937423 at * 7 (S.D. Ohio

March 25, 2010).

On November 15, 2011, Mr. Bingham completed a checklist mental RFC assessment. (Tr. 1824-26.) Mr. Bingham indicated that Leach was markedly limited in each and every area of functioning identified on the form. *Id*. The form otherwise contains no explanations of these findings. The ALJ addressed this assessment as follows:

> The undersigned has given little weight to the opinion of the claimant's treating source David Bingham, P.M.H.C.N.S.-B.C., a psychiatric nurse. He opined that the claimant has marked limitations in understanding and memory, sustaining concentration and persistence, social interaction, and in adaptation (Ex. 27F). There simply is no evidence to support the degree of limitation the nurse has assigned to the claimant.

(Tr. 31.)

Leach contends that the ALJ failed to specify how Bingham's opinion is inconsistent with the evidence. (ECF No. 22 at 20.) Leach's argument, however, does not identify any medical evidence that supports the marked limitations assessed by Bingham. In his brief, he simply notes that he was also treated at the Zepf Center by psychiatrist Nagaven Ragothaman, M.D. (ECF No. 22 at 21.) Leach, however, fails to explain how Dr. Ragothaman's treatment supports Mr. Bingham's opinion. *Id*. Earlier in the Facts section of the brief, Leach does reference a mental RFC assessment completed by Dr. Ragothaman. (ECF N.o. 22 at 6, citing Tr. 1720-21.) Dr. Ragothaman's assessment, however, comports with the ALJ's opinion that Mr. Bingham's assessment was not supported by the evidence. Notably, while Mr. Bingham believed Leach was markedly impaired in each and every category, treating psychiatrist Dr. Ragothaman found Leach had *no marked limitations*. (Tr. 1720.) He found Leach had moderate limitations in five areas of functioning and was not significantly limited in the remaining fifteen areas of functioning. *Id*. In his reply brief, Leach also points to a Global Assessment of Functioning ("GAF") score of 52 from treating psychiatrist Pratap Torsekar, M.D., on June 20, 2012.[1] (ECF No. 24 at 1.) Again, this evidence supports the ALJ's treatment of Mr. Bingham's

---

[1] The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Association, 4th ed revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0 - 100,

opinion, as a GAF score of 52 reflects moderate symptomology. *See DSM-IV* at 34.

Conversely, the ALJ gave great weight and significant weight respectively to Cindy Matyi, Ph. D., and Roger Johnson, M.Ed. – individuals who qualify as acceptable medical sources under the regulations. (Tr. 31.) Here, the decision reflects that the ALJ *considered* Mr. Bingham's opinions in resolving Leach's case and *explained*, albeit briefly, why she assigned little weight to his assessment. Although the Court notes that it would have been beneficial if the ALJ offered a more in-depth explanation of Mr. Bingham's opinion, the regulations do not require the same heightened "good reasons" analysis that applies to the opinions of acceptable medical sources who actually treat the claimant. *Zeiger v. Colvin Comm'r*, 2014 U.S. Dist. LEXIS 125335 (N.D. Ohio Sept. 8, 2014) (finding no error in the ALJ's failure to consider a questionnaire from an "other source" because the ALJ's decision was supported by substantial evidence in the record, including the opinions of State Agency physicians); *Carter v. Comm'r of SSA*, 2013 U.S. Dist. LEXIS 129874 at *30 (N.D. Ohio July 25, 2013) (finding that while the ALJ did not address the nurse practitioner's opinion as a whole, the ALJ adequately supplied reasons for discounting her findings by highlighting inconsistencies between her treatment notes and her assessment); *Starr v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 23980 (S.D. Ohio Feb. 21, 2013) (finding no error where the ALJ accorded little weight to the opinion of a nurse practitioner despite giving only a succinct statement that claimant had only recently begun treatment with the source); *cf. Simpson v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 107840 (S.D. Ohio Aug. 5, 2014) (noting that an ALJ, when weighing an "other source," should consider how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the

---

with lower numbers indicating more severe mental impairments. A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See DSM-IV* at 34. A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *Id.*

individual's impairment ... [but] [n]ot every factor will apply in every case."); *Davila v. Comm'r of Soc. Sec.*, 993 F. Supp. 2d 737 (N.D. Ohio 2014) ("An ALJ need not weigh each of these factors in every case.")

In a somewhat related argument, Leach suggests that the ALJ erred by failing to mention any of his GAF scores. In support, Leach relies on this Court's prior decision in *Edwards ex rel. R.M. v. Comm'r of Soc. Sec.*, 2012 WL 1096154 at *7 (N.D. Ohio Mar. 2, 2012), wherein the Court remanded because the "ALJ's decision fail[ed] to offer any meaningful discussion of Dr. Rehman's treatment notes, including her GAF findings." (ECF No. 22 at 22-23.)

Leach points to some of the following GAF scores in his brief and reply. The Court has included others omitted by Leach and rearranged the scores in chronological order:

- 4/14/2002 - GAF score of 15-20 assessed by Panos T. Doukides, M.D., on a psychiatric admission note wherein Leach was diagnosed with suicidal ideation and mixed substance abuse. (Tr. 657.)

- 5/12/2004 - GAF score of 50 assessed by Ann Evans, LSW, in a Diagnostic Assessment / Intake Summary / Multi Axial Evaluation. (Tr. 1199.)

- 5/26/2004 - GAF score of 50 assessed by Deborah Morgan, MSN CNS in what appears to be a initial psychiatric evaluation wherein it was further noted that Leach was in early remission with respect to his substance abuse problems. (Tr. 1185.)

- 3/8/2007 - GAF score of 62 assessed by Melanie Lint, MSN, RN, CNS. (Tr. 1025-1030.)

- 5/8/2008 - GAF score of 65 assessed by psychiatric consultant Teresa Smith, CNS. (Tr. 1022-24.)

- 7/30/2008 - GAF score of 45 assessed by Anne Manning, LSW, in an Adult Diagnostic Assessment. (Tr. 1111-1120.)

- 09/3/2008 - GAF score of 52 assessed by treating psychiatrist Dr. Ragothaman in a Physician Psychiatric History and Evaluation wherein Leach was diagnosed with substance abuse in remission. (Tr. 1123.)

- 11/10/2009 - GAF score of 45 assessed by Vicki Congrove, MSW, LISW, in an Adult Diagnostic Assessment. (Tr. 1277-1278.)

- 1/25/2010 - GAF score of 55 assessed by psychiatric nurse David Bingham.[2] (Tr.

---

[2] It bears noting that Mr. Bingham's GAF score assessment of 55 – squarely in the middle of the moderate range of social, occupation or school functioning – does not appear to support his later functional assessment of exclusively marked limitations.

11

> 1328.)
> 
> • 4/21/2010 - GAF score of 65 assessed by consultative psychological examiner K. Roger Johnson, M. Ed. (Tr. 1313.)
> 
> • 6/20/2012 - GAF score of 52 assessed by treating psychiatrist Dr. Torsekar, M.D., in an initial psychiatric evaluation. (Tr. 1962.)

The ALJ noted that despite Leach alleging an onset date of October 1, 1998, "[f]or the purposes for today's decision, the medical evidence before the claimant's supplement security income [SSI] application filing date of November 18, 2009 does not have great significance because even if the claimant were found disabled as of October 1, 1998, the [SSI] would not become payable until the month after the month in which the application is filed, assuming all eligibility requirements are met."[3] (Tr. 26.) Therefore, the ALJ indicated that while she reviewed all of the evidence of record, including the evidence prior to Leach's application for SSI, she would only discuss such evidence to the extent it was relevant to disability beginning on November 18, 2009. (Tr. 26-27.) As such, the case at bar is distinguishable from *Edwards ex rel. R.M.*, as all but three of the unmentioned GAF scores predate the relevant time period, and the three pertinent GAF scores of 52, 55 and 65 are indicative of no more than moderate symptoms.[4]

This case is further distinguishable in that in *Edwards ex rel. R.M.*, the GAF scores were part of a treating physician's treatment notes which were not discussed. Conversely, most of the lower GAF assessments do not come from accepted medical sources but rather from other sources. The two more recent GAF scores from treating psychiatrists Torsdekar and Ragothaman are not inconsistent with the ALJ's decision to accord little weight to Mr. Bingham's opinion. The very low assessment of Dr. Doukides was given over seven years prior to the relevant time period and during a time when Leach was suicidal and engaged in substance

---

[3] Leach has not challenged the accuracy of this statement.

[4] Though the November 10, 2009 GAF score of 45 is potentially relevant, the failure to mention this score from a non-medical "other source" is not a basis for remand, especially given that the score is inconsistent with other assessments in the relevant time period from medical professionals.

abuse. The ALJ's decision found that there was "no evidence of serious drinking and drug abuse for the period after [Leach's] disability application filing date" and Leach asserted that he had maintained his sobriety since May of 2010. (Tr. 27.) As such, the Court finds it was not unreasonable for the ALJ to omit any discussion of GAF scores that were unrelated to Leach's functioning during the relevant time frame.

The omission of any discussion of GAF scores that supported the ALJ's decision to reject the marked limitations assessed by Mr. Bingham, on the other hand, was harmless. It also bears noting that this Court's decision in *Edwards ex rel. R.M.* did not suggest that failure to discuss GAF scores was *per se* error. Furthermore, the decision specifically recognized that GAF scores do not correlate to Listing severity requirements, noting that the Commissioner declined to endorse the use of GAF scores in SSI disability programs. 2012 WL 1096154 at **6-7 (citations omitted). A subsequent update of the DSM, which post-dates the *Edwards ex rel. R.M.* decision, eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* ("DSM-5") at 16 (American Psychiatric Association, 5th ed., 2013). Thus, the use of GAF scores is now disfavored by the American Psychiatric Association.

Finally, Leach appears to argue that the ALJ erred by ascribing greater weight to the medical opinions of non-examining State Agency physicians than to the opinions of Mr. Bingham, but cites no law on this point. To be sure, in weighing and considering "medical opinions," the Commissioner generally gives more weight to examining than non-examining sources. 20 C.F.R. § 416.927(b) & (c)(1). However, the regulations define "medical opinions" as "statements from physicians and psychologists or other ***acceptable medical sources***..." 20 C.F.R. § 416.927(a)(2) (emphasis added). While nurse practitioners may constitute other medical sources pursuant to the regulations, their opinions do ***not*** constitute opinions from "acceptable medical sources," which are expressly identified as licensed physicians, psychologists, optometrists, podiatrists, and speech-language pathologists. 20 C.F.R. § 416.913(a)(1) through (a)(5). Simply put, the regulations do not require the Agency to give greater weight to a non-medical opinion from an examining "other source" over the medical

opinion of a non-examining physician or psychologist. Clearly, Mr. Bingham could not proffer a "medical opinion."

As such, Leach's second assignment of error is without merit.

**Education Level**

In his final assignment of error, Leach argues that the ALJ erred by finding that he had a high school level education. (ECF No. 22 at 24-25.) Specifically, Leach asserts that the grade level a claimant completes does not necessarily represent that individual's actual educational abilities. *Id*. Leach relies on 20 C.F.R. § 416.964(a), which states as follows:

> (a) General. Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability. However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education. Your daily activities, hobbies, or the results of testing may also show that you have significant intellectual ability that can be used to work.

The ALJ found Leach had a high school education. (Tr. 31.) At the hearing, Leach testified that the highest grade he completed was the tenth grade, but that he received a GED from the correctional facility in Toledo, Ohio. (Tr. 50, 66-67.) Leach, however, argues that the ALJ erred because testing performed fourteen (14) years prior to the ALJ's decision, in 1998, resulted in a beta IQ score of 59 and a reading ability at the 5.9 grade level.[5] (ECF No. 22 at 24.) In his reply brief, Leach also points to a test performed in 2003, which yielded a verbal IQ of 91, and performance and full scale scores of 89, as well as a reading score in the 13th percentile. (ECF No. 24 at 4, citing Tr. 592.) This later test, however, does not indicate to which grade level Leach's scores correspond. Leach relies on a Sixth Circuit decision in *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447 (6th Cir. 1990), wherein the Court found that "[a]

---

[5] Consequently, Leach contends that his actual education level is more akin to a marginal education. (ECF No. 22 at 24.) "Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R. § 416.964(b)(2).

numerical grade level is properly used to determine a claimant's educational abilities only if contradictory evidence does not exist." Conversely, the Commissioner argues that it was not unreasonable for the ALJ to give greater weight to the fact that Leach successfully completed a GED in 2001 (Tr. 590), which occurred after Leach's brain injury sustained in 1995. (ECF No. 23 at 17-18.)

Unlike in *Skinner*, Leach unambiguously testified that he completed the tenth grade and received a GED. In *Skinner*, the Sixth Circuit noted that the record was "overwhelming" and "replete" with examples of the claimant's illiteracy, yet the ALJ determined the claimant had a "marginal" education based solely on the disability form which indicated claimant had completed the eighth grade despite the claimant's testimony that he completed only three grades. *Id*. at 450. In a similar case, a claimant argued that his testing at a grade level of 4.2 rendered the ALJ's finding of a "limited" education (7th - 11th grade) erroneous. *See Stern v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 148473 (N.D. Ohio, Nov. 23, 2011). The *Stern* court noted that the evidence relied upon by the claimant was only a portion of the evidence, and found substantial evidence supported the ALJ's decision where there was evidence that the claimant could read "fairly well," that he read the newspaper, and that he went to the library with his children and read them books. *Id*.

Here, the ALJ had to decide whether the tests cited by Leach or his actual education level coupled with the achievement of a GED were the better measure. Given that the evidence was not overwhelming in favor of one finding over the other, this Court cannot conclude that the ALJ's reliance upon the latter rendered the decision unsupported by substantial evidence.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White
United States Magistrate Judge

Date: October 8, 2014

**OBJECTIONS**
Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).